W.A. GRIFFIN, MD, Plaintiff–Appellant,

v.

HABITAT FOR HUMANITY INTERNATIONAL, INC., Defendant–Appellee.

No. 15–13516
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Feb. 2, 2016.

---

W.A. Griffin, Atlanta, GA, pro se.

Tiffany Downs, Scott V. Wagner, Jr., Ford & Harrison, LLP, Atlanta, GA, for Defendant–Appellee.

Before HULL, MARCUS and JILL PRYOR, Circuit Judges.

PER CURIAM:

Proceeding *pro se*, Dr. W.A. Griffin appeals the dismissal of her complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a). After careful consideration, we affirm.

I.

Dr. Griffin, who operates a dermatology practice in Atlanta, Georgia, treated a patient insured under a Habitat for Humanity International, Inc. ("Habitat") health plan (the "Plan").[1] Dr. Griffin is an out-of-network provider for the Plan. The insured executed an assignment that "assign[ed] and convey[ed]" to Dr. Griffin "all medical benefits and/or insurance reimbursement, if any, otherwise payable to me for services rendered from [Dr. Griffin] ..., regardless of [Dr. Griffin's] managed care network participation status." Legal As-

---

1. At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to Dr. Griffin. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir.2012). We also consider the Health Benefits Plan document, which Habitat submitted to the district court with its motion to dismiss. Although Dr. Griffin did not attach this document to her complaint, we may consider it because it is central to the complaint and its contents are not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999).

signment of Benefits (Doc. 1).[2] The assignment further stated that it was "valid for all administrative and judicial review under ... ERISA." *Id.*

Habitat sponsors the Plan, which is a self-funded group health benefit plan governed by ERISA, and serves as the plan administrator. Blue Cross Blue Shield of Georgia ("BCBSGA") serves as the Plan's claims administrator to review and decide claims and appeals under the Plan. An anti-assignment provision in the Plan documents bars participants from assigning their benefits under the Plan without written permission from BCBSGA. *See* Health Benefits Plan at 90 (Doc. 8–2) ("Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment.... Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void.").[3]

Dr. Griffin submitted a claim to BCBSGA for services she provided to the insured, which she alleges BCBSGA underpaid. She filed with BCBSGA a level one administrative appeal regarding the claim. With her administrative appeal, Dr. Griffin requested at least ten categories of documents from BCBSGA. She also demanded that BCBSGA notify her whether the Plan contained an anti-assignment clause, warning that if it failed to do so, she would argue in litigation that the anti-assignment clause was unenforceable. BCBSGA denied her appeal. She then filed a level two administrative appeal again demanding many categories of documents and that BCBSGA disclose whether the Plan included an anti-assignment clause. BCBSGA failed to respond to the level two appeal. BCBSGA never provided Dr. Griffin with any of the documents she requested with her appeals nor disclosed that the Plan had an anti-assignment provision.

Dr. Griffin sued Habitat in federal court, bringing ERISA claims for unpaid benefits, breach of fiduciary duty, failure to provide Plan documents, and breach of contract. She sought approximately $928 in unpaid benefits, at least $64,000 in penalties, and declaratory relief. Habitat moved to dismiss the complaint. While the motion to dismiss was pending, Dr. Griffin sought leave to amend her complaint to add an additional claim based upon co-fiduciary liability under ERISA. The district court granted the motion to dismiss and denied the motion to amend, concluding that Dr. Griffin lacked statutory standing under ERISA based on the Plan's anti-assignment provision. Accordingly, the district court dismissed the case without prejudice. This appeal followed.

## II.

Although courts have long applied the label of "statutory standing" to the basis for decisions such as the district court's here, that Dr. Griffin lacked standing under ERISA, the Supreme Court has cautioned that this label is "misleading" because the court is not deciding whether there is subject matter jurisdiction but rather whether the plaintiff "has a cause of action under the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 1387–88 & n. 4, 188 L.Ed.2d 392 (2014) (internal quota-

---

**2.** Citations to "Doc." refer to docket entries in the district court record in this case.

**3.** The Plan further prohibits an insured from "assign[ing] his right to sue to recover benefits under the plan, to enforce rights due under the plan or any other causes of action that he or she may have against the plan or its fiduciaries." Health Benefits Plan at 90 (Doc. 8–2).

tion marks omitted). Put differently, we understand the district court's decision that Dr. Griffin lacked statutory standing to be a determination that she failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1273–74 (11th Cir.2015).

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir.2012) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "[N]aked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). Upon review of dismissals for failure to state a claim, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir.2011) (internal quotation marks omitted).

### III.

Section 502(a) of ERISA provides that only plan participants and plan beneficiaries may bring a private civil action to recover benefits due under the terms of a plan, to enforce rights under a plan, or to recover penalties for a plan administrator's failure to provide documents. 29 U.S.C. § 1132(a)(1), (c). This provision also limits the right to sue for breach of fiduciary duty to plan participants, plan beneficiaries, plan fiduciaries, and the Secretary of Labor. *Id.* § 1132(a)(2). Additionally, only plan participants, plan beneficiaries, and plan fiduciaries may bring a civil action to obtain equitable relief to redress a practice that violates ERISA or the terms of a plan. *Id.* § 1132(a)(3). As we have explained, "[h]ealthcare providers ... are generally not 'participants' or 'beneficiaries' under ERISA and thus lack independent standing to sue under ERISA." *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1294 (11th Cir.2004).

There is, however, an exception to this general rule that healthcare providers have no right of action under section 502(a). We have recognized that "[h]ealthcare providers may acquire derivative standing ... by obtaining a written assignment from a 'beneficiary' or 'participant' of his right to payment of benefits under an ERISA-governed plan." *Id; see also Cagle v. Bruner*, 112 F.3d 1510, 1515 (11th Cir.1997) (explaining that "neither the text of § 1132(a)(1)(B) nor any other ERISA provision forbids the assignment of health care benefits provided by an ERISA plan"). Although ERISA does not prohibit a plan participant or beneficiary from assigning benefits to her provider, we have held that an anti-assignment provision in a plan, which limits or prohibits a plan participant or beneficiary from assigning her right to payment of benefits, is valid and enforceable. *Physicians Multispecialty Grp.*, 371 F.3d at 1296. Accordingly, when a plan contains an unambiguous anti-assignment provision, a plan participant or beneficiary may not assign benefits to a healthcare provider, meaning the healthcare provider cannot acquire a cause of action under section 502(a). *Id.*

### A.

In this case, the insured's assignment purported to transfer to Dr. Griffin

the right to payment of benefits. We have recognized that when a patient assigns to a provider of the right to payment for medical benefits, he also conveys the right to file an action under section 502(a) of ERISA for unpaid benefits. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.,* 591 F.3d 1337, 1352–53 (11th Cir.2009). Thus, if enforceable, the assignment transferred to Dr. Griffin the right to bring a cause of action under section 502(a) for unpaid benefits.[4] But Habitat's Plan documents include an unambiguous anti-assignment provision, which prohibits assignment except as required by law. *See* Health Benefits Plan at 90 (Doc. 8–2) ("Except as applicable law may otherwise require, no amount payable at any time hereunder shall be subject in any manner to alienation by ... assignment.... Any attempt to ... assign ... any such amount, whether presently or hereafter payable, shall be void."). Therefore, even though Dr. Griffin alleged that the insured assigned Plan benefits to her, the assignments are void.

We reject Dr. Griffin's argument that the assignment is valid under the Plan's anti-assignment provision because Georgia state law requires assignments of benefits to healthcare providers. Dr. Griffin relies on a Georgia statute stating that "whenever ... [a] self-insured health benefit plan ... provides that any of its benefits are payable to a participating or preferred [licensed] provider of health care services,"

the plan must also "pay such benefits either directly to any similarly licensed nonparticipating or nonpreferred provider who has rendered such services, has a written assignment of benefits, and has caused written notice of such assignment to be given ... or jointly to such nonparticipating or nonpreferred provider and to the insured." O.C.G.A. § 33–24–54(a). These benefit payments must be sent "directly to the provider who has the written assignment." *Id.* The statute guarantees that if benefits are payable to preferred or participating providers under a self-insured plan, the plan must also pay benefits to nonparticipating or non-preferred healthcare providers to whom patients have assigned their rights. Nothing in this statute requires an insured to assign her benefits to a medical provider.[5] Accordingly, we conclude that even though the insured assigned Plan benefits to Dr. Griffin, the assignment is void under the anti-assignment provision.

### B.

■ Dr. Griffin argues that Habitat cannot rely on the anti-assignment provision because BCBSGA failed to notify her of the provision after she asked whether the Plan contained such a term. Liberally construed, Dr. Griffin's argument is that because BCBSGA failed to disclose the anti-assignment term, Habitat either is equitably estopped from relying on the anti-assignment term or has waived it. We disagree.

---

4. Although the assignment transferred to Dr. Griffin the insured's right to sue under section 502(a) of ERISA for unpaid benefits, the assignment contained no provision transferring the insured's right to assert claims for breach of fiduciary duty or civil penalties. Because the insured never assigned to Dr. Griffin the right to bring such claims, she lacks derivative standing to bring these claims under section 502 of ERISA.

5. Dr. Griffin makes an alternative argument that even if the Plan prohibits the assignments, the anti-assignment provision is void under section 33–25–54. We reject this argument for a related reason: nothing in this statute explicitly prohibits a health benefits plan from barring assignments. We fail to see how section 33–24–54 renders anti-assignment provisions unenforceable and decline to hold that the statute implicitly bars anti-assignment provisions.

Under ERISA equitable estoppel applies only when "the plaintiff can show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir.2004). Because the anti-assignment provision is unambiguous, equitable estoppel cannot apply here.

We have "left open the question of whether waiver principles might apply under the federal common law in the ERISA context." *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir.2014). But even if we assume that waiver could apply in the ERISA context, Dr. Griffin has failed to plead sufficient facts to show that Habitat waived the anti-assignment provision. "[W]aiver is the voluntary, intentional relinquishment of a known right." *Id.* (internal quotation marks omitted). We have explained that waiver may be express or implied, but to find implied waiver "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Dooley v. Weil (In re Garfinkle)*, 672 F.2d 1340, 1347 (11th Cir.1982).

Dr. Griffin has neither alleged nor explained how Habitat intentionally relinquished its rights under the anti-assignment provision. In fact, she alleged no interaction or communication with Habitat before she filed this lawsuit. Although she alleged that BCBSGA failed to inform her of the anti-assignment provision during the administrative process, even liberally construing her pleadings and accepting her allegations as true, we find these allegations insufficient to establish a "clear case" that Habitat intentionally and voluntarily relinquished its rights under the anti-assignment provision. *Id.*[6]

### IV.

We conclude that the Dr. Griffin failed to state a claim because she failed to allege facts sufficient to support a cause of action under § 502(a) of ERISA. Accordingly, the district court committed no error in dismissing her complaint against Habitat.[7]

**AFFIRMED.**

---

**6.** We express no opinion about whether Dr. Griffin's allegations would be sufficient to plead that BCBSGA waived the anti-assignment provision, as that question is not before us.

**7.** Dr. Griffin also argues that the district court erred in denying her motion to amend her complaint to add an additional claim under ERISA. We review the district court's denial of a motion to amend a complaint for abuse of discretion, but we review *de novo* whether the proposed amendment to the complaint would be futile. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802–03 (11th Cir.1999). Because of the anti-assignment provision, Dr. Griffin has no right of action under ERISA; thus, the proposed amendment would be futile, and the district court properly denied the motion to amend.